**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

COLLENE JEFFRIES,     )
           )
     Plaintiff,  )
           )
  v.        )   1:18CV51
           )
NANCY A. BERRYHILL,    )
Acting Commissioner of Social )
Security,        )
           )
     Defendant.  )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

   Plaintiff, Collene Jeffries, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 14; <u>see also</u> Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum); Docket Entry 16 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

**I. PROCEDURAL HISTORY**

   Plaintiff applied for DIB, alleging a disability onset date of November 12, 2013. (Tr. 184-95.) Upon denial of that application initially (Tr. 59-67, 105-13) and on reconsideration (Tr. 68-100,

117-24), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 125). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-58.) Following the hearing, Plaintiff's representative filed a Post-Hearing Memorandum of Law and Objections to the Vocational Witness' Testimony ("Post-Hearing Objections") with the ALJ. (Tr. 274-312.) The ALJ subsequently overruled Plaintiff's objections to the VE's testimony (see Tr. 16-17), and determined that Plaintiff did not qualify as disabled under the Act (Tr. 13-29). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 179-81, 314-15), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2018.

2. [Plaintiff] has engaged in substantial gainful activity during the following periods: from December 2013 through March 2014.

. . . [E]ven if [Plaintiff] had not engaged in substantial gainful activity during this period, she would still be found not disabled for the entire period at issue . . . .

3. [T]here has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity. The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity.

4. [Plaintiff] has the following severe impairments: degenerative disc disease, migraine headaches, affective disorder, and anxiety disorder.

. . .

5. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

6. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except [she] can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can tolerate no greater than occasional exposure to unprotected heights or moving mechanical parts. [Plaintiff] is limited to simple, routine, repetitive tasks, but not at a production rate pace (e.g., assembly line work). She is further limited to simple, work-related decisions. She can have occasional contact with supervisors, coworkers, but no contact with the general public.

. . .

7. [Plaintiff] is unable to perform any past relevant work.

. . .

11. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

12.  [Plaintiff] has not been under a disability, as
        defined in the . . . Act, from November 12, 2013, through
        the date of this decision.

(Tr. 19-28 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."

---

[1]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed.  The Supplemental Security Income Program . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred in relying on [VE] testimony to fulfill [the ALJ's] step 5 burden without properly addressing [Plaintiff's] [P]ost-[H]earing [O]bjections to the [VE's] testimony"  (Docket Entry 13 at 3 (single-spacing, underscoring, and bold font omitted)); and

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) "[t]he ALJ erred by failing to analyze the opinion[s of physical therapist Peggy Anglin ('PT Anglin')] in accordance with the regulations, [SSA] policy, and Fourth Circuit precedent" (Docket Entry 11 at 11 (single-spacing, underscoring, and bold font omitted)).

Defendant asserts otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 3-18.)

### 1. Post-Hearing Objections to the VE

In Plaintiff's first issue on review, she argues that "[t]he ALJ erred in relying on [VE] testimony to fulfill [the ALJ's] step 5 burden without properly addressing [Plaintiff's] [P]ost-[H]earing [O]bjections to the [VE's] testimony." (Docket Entry 13 at 3 (single-spacing, underscoring, and bold font omitted).) According to Plaintiff, "*the ALJ did not even acknowledge or discuss the rebuttal vocational evidence or the objections filed by Plaintiff regarding the [VE's] testimony*." (Id. (emphasis in original).) Plaintiff maintains that the ALJ's failure to discuss Plaintiff's "rebuttal evidence" from vocational rehabilitation counselor Paula Santagati that "'the limitation of occasional interaction with coworkers and supervisors precludes all work'" (id. at 6 (quoting Tr. 311)) does not qualify as harmless error, because that evidence "directly contradicts the [VE's] opinion that Plaintiff can perform the jobs [the VE] named" (id.). Plaintiff further contends that

9

the ALJ's failure to rule on Plaintiff's objections does not constitute harmless error (id. at 7), because those "objection[s] demonstrated that up-to-date vocational information found at the [Occupational Information Network ('O*NET')] contradicted the [VE's] testimony that two of the jobs he [sic] identified (industrial sweeper/cleaner and laboratory equipment cleaner) could be performed at the unskilled level required by the ALJ's RFC" (id. at 8 (citing Tr. 21-22, 53, 277)). Plaintiff thus argues that the ALJ erred by issuing "an unfavorable decision . . . prior to affording [Plaintiff] the opportunity to address th[ose] inconsistencies directly with the [VE]." (Id.) Plaintiff's contentions fall short.

As an initial matter, despite cross-examination of the VE by Plaintiff's counsel on several matters at the hearing (see Tr. 56-57), including the "sources of information [the VE] rel[ied] on in reaching [her] conclusions regarding the job numbers" (Tr. 56), Plaintiff's counsel neither questioned the VE regarding the specific issues raised in the Post-Hearing Objections, nor objected to the VE's testimony on any subject (see Tr. 56-58). As a result, Plaintiff has forfeited those arguments and objections, both in terms of the ALJ's obligation to address the Post-Hearing Objections, see Mitchell v. Berryhill, No. 17 C 6241, 2019 WL 426149, at *8 (N.D. Ill. Feb. 4, 2019) (ruling that ALJ had no obligation to address the plaintiff's post-hearing objections to

VE, "as none of [the c]laimant's post-hearing objections were first raised at the hearing"), and of Plaintiff's right to judicial review of those matters in this Court, see Brown v. Colvin, 845 F.3d 247, 254 (7th Cir. 2016) (deeming a claimant's failure to object to VE testimony at the hearing a forfeiture of such arguments on judicial review); Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) (holding that the plaintiff "waived any claim he may have had on th[e] issue[ in question because his] attorney had two opportunities to pose his own hypothetical questions to the VE, and he never mentioned [the issue]"); Bachand v. Colvin, No. 1:15CV00686, 2016 WL 4074148, at *10 (M.D.N.C. July 29, 2016) ("To the extent Plaintiff now complains that the ALJ (and/or VE) did not sufficiently explain the methodology used to arrive at the reduced numbers of jobs, Plaintiff has waived such argument by failing to press the VE further on cross-examination regarding his methodology."), recommendation adopted, slip op. (M.D.N.C. Sept. 2, 2016) (Schroeder, J.); Coleman v. Colvin, Civ. No. 0:14-2697-RBH, 2015 WL 5474674, at *19 (D.S.C. Sept. 16, 2015) (unpublished) ("[T]he court is unpersuaded by [the plaintiff's] attempts to now challenge the [VE's] testimony and the ALJ's findings and point out possible conflicts when none was raised during the proceeding."); Helsper v. Colvin, Civ. No. 12-0708(SRN/SER), 2013 WL 3974174, at *19 n.19 (D. Minn. July 30, 2013) (unpublished) ("The ALJ relied on the VE's testimony about [available] jobs in [the ALJ's] findings

at Step Five. [The plaintiff] did not challenge the VE's testimony as to those jobs and, therefore, any argument related to them is waived." (internal citation omitted)); Campbell v. Commissioner of Soc. Sec., Civ. No. 11–14559, 2013 WL 823377, at *7 (E.D. Mich. Feb. 13, 2013) (unpublished) ("[D]espite expressly being given the opportunity to question the VE at the conclusion of the ALJ's questioning, [the] plaintiff's counsel failed to make any further inquiries or challenges to [the VE's] testimony and thus waived any argument he may otherwise have had regarding the . . . occupations the VE testified were available to [the] plaintiff." (internal citation omitted)), recommendation adopted, 2013 WL 822392 (E.D. Mich. Mar. 6, 2013) (unpublished); Stepinski v. Astrue, No. CA 11–183 ML, 2012 WL 3866678, at * 9–10 (D.R.I. Aug. 6, 2012) (unpublished) ("[The p]laintiff's counsel questioned the VE . . . and did not ask about th[e] matter [at issue] . . . . The [c]ourt views unfavorably the silence of [the p]laintiff's counsel at the hearing . . . . Reversal and remand . . . would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), recommendation adopted, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished).

Plaintiff nevertheless contends that "it [wa]s impossible" to address the matters raised in the Post-Hearing Objections during

the ALJ's hearing, because "[t]he majority of the time set aside for the hearing was dedicated to questioning [Plaintiff]," and the VE's "testimony comprised a small percentage of the hearing." (Docket Entry 13 at 10 n.5.) However, despite Plaintiff's assertion of hearing time constraints, "there is no indication that the ALJ restricted [P]laintiff's representative from further questioning the VE at the hearing." Smith v. Berryhill, No. CV 17-0401, 2018 WL 3719884, at *6 (W.D. La. July 19, 2018) (unpublished), recommendation adopted, 2018 WL 3715754 (W.D. La. Aug. 3, 2018) (unpublished).

Moreover, Plaintiff asserts that "[i]t is simply not reasonable to expect that, in the waning moments of the hearing, with no notice of what [the VE] might say, when the [VE] can rely on any number of vocational sources but in this case relied on [the Dictionary of Occupational Titles ('DOT'),] a source with 12,000 complex descriptions of jobs with many moving parts, that a representative can effectively raise every possible issue without first consulting the source materials." (Id. at 11 n.5.) Plaintiff further argues that "the [VE] in this case did not provide a report prior to the hearing and therefore all of his [sic] testimony was 'surprise testimony.' The [SSA] patently acknowledges that such testimony can leave unanswered questions at the close of the hearing." (Id. at 9 (citing Hearings, Appeals, and Litigation Law Manual ("HALLEX") § I-2-6-80 ("If testimony at

13

a hearing leaves unanswered questions, the ALJ may supplement the hearing record with additional oral testimony, a deposition, or additional documentary evidence. A continuance or supplemental hearing is appropriate when: certain testimony or a document adduced at the hearing has taken the claimant by surprise, is adverse to the claimant's interest, and presents evidence that the claimant could not reasonably have anticipated and to which the claimant is not prepared to respond . . . .")).)

Notwithstanding Plaintiff's characterization of the VE's statements as "surprise testimony" (id. at 9), the materials attached to Plaintiff's Post-Hearing Objections make clear that Plaintiff's representatives during the administrative proceedings[5] possessed their "rebuttal evidence" and documents supporting their "objections" long before the VE's testimony in this case. (See Tr. 281-311 (containing letters from BLS employees dated Feb. 12, 2014, and Nov. 19, 2007, and Santagati's opinion dated Oct. 1, 2015).) Thus, Plaintiff's counsel "reasonably . . . anticipated" that this issue would arise in connection with the VE's testimony and had or should have "prepared to respond" to testimony on that issue during the ALJ's hearing, HALLEX § I-2-6-80, as recently recognized by another federal district court:

---

[5] Plaintiff retained different counsel to represent her in the instant petition for judicial review.

The Santagati Opinion is dated October 1, 2015.  Thus, it was "obtained" more than a year before the [VE's] testimony, offered on December 6, 2016[,] even came into existence.

. . .

. . . [T]he Santagati Opinion appears to be a "form" opinion used by disability claimants whenever a restriction to occasional coworker or supervisor interaction comes into play.  See Treadaway v. Berryhill, No. 4:17-cv-1093, 2018 WL 3862106, at *5 (S.D. Tex. Aug. 13, 2018).  Claimants in several cases have offered the same or similarly generic opinions from Ms. Santagati. See, e.g., id.; Collins v. Berryhill, No. 3:17cv633 (MHL), 2018 WL 4232888, at *13 (E.D. Va. Aug. 20, 2018) (addressing the same Santagati Opinion and noting "the widespread use of the very same Report by plaintiffs in other courts"); Looney v. Berryhill, No. 3:17cv450 (DJN), 2018 WL 3826778, at *11-12 (E.D. Va. Aug. 10, 2018) (addressing the same Santagati Opinion and noting that "[s]everal courts have received reports from Santagati containing identical testimony regarding work-preclusive social limitations"); Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *4 (E.D. Ky. June 19, 2018); Lara v. Berryhill, No. B-17-77, 2017 WL 7790109, at *7 (S.D. Tex. Dec. 4, 2017); Reeves v. Berryhill, No. 3:16-CV-2510, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017).  Like [the plaintiff's] use of the Santagati Opinion here, these claimants waited until after the administrative hearing to submit Ms. Santagati's opinion and then, on appeal to the federal district court, argued that the ALJ's treatment of the opinion required remand.  Treadaway, 2018 WL 3862106, at *5; Looney, 2018 WL 3826778, at *11-12; Kidd, 2018 WL 3040894, at *3-4; Lara, 2017 WL 7790109, at *7, *9-10; Reeves, 2017 WL 3433706, at *11; see also Collins, 2018 WL 4232888, at *12-14 (arguing that the Appeals Council erred in rejecting the Santagati Opinion).  While the [c]ourt does not know whether all the claimants in the cases identified by the [c]ourt were represented by the same representatives at the administrative level, they were all represented at the district court level by [the plaintiff's] lead counsel here.

This pattern suggests a strategy by disability claimant representatives to forego cross-examining a VE about the

issues raised by the Santagati Opinion, even though the
opinion is in hand (or at least known) before the
hearing. See, e.g., Kidd, 2018 WL 3040894, at *4 (noting
that because the Santagati report existed at the time of
the hearing, the claimant could have cross-examined the
VE on the issues raised on appeal, although he did not).
The representatives then submit the Santagati Opinion
after the hearing, and if the ALJ rules unfavorably
despite the submission, the Santagati Opinion serves as
a potential basis for remand on appeal. If such a
strategy is in fact being implemented, it abuses the
process by which claimants can properly submit
post-hearing evidence for consideration in social
security disability cases.

The [c]ourt cannot say for sure whether this is what
occurred in this instance. But it notes that prior to
the December 6, 2016 hearing here, Ms. Santagati was an
employee of Citizens Disability, LLC, which represented
[the plaintiff] at this hearing and afterwards. Rosado
v. Berryhill, No. 4:16-cv-00173, 2018 WL 816578, at *2
(E.D. Va. Jan. 22, 2018). In March 2016, Ms. Santagati
testified on behalf of the claimant in Rosado, who was
also represented by Citizens Disability, LLC, and she
gave the same opinion reflected by the Santagati Opinion
here: that a limitation to occasional interaction with
coworkers and supervisors would preclude all work.
Rosado, 2018 WL 816578, at *2, *6. Thus, even if [the
plaintiff's] representatives from Citizens Disability,
LLC were not aware of the Santagati Opinion in October
2015 (when Ms. Santagati offered it), they were almost
certainly aware of it well before they attended the
December 6, 2016 hearing or submitted the February 7,
2017 Post-Hearing Memorandum. And while [the
plaintiff's] representative may not have known beforehand
precisely what [hypothetical] questions the VE would be
asked at the hearing, restrictions on coworker and
supervisor interaction are commonly incorporated into
[such] questions. [The plaintiff's] representative
should have expected that the ALJ's questioning might
touch upon these restrictions and, as necessary, been
prepared to question [the VE] based on the
already-existing Santagati Opinion.

Mitchell, 2019 WL 426149, at *9-10 (internal citations to

administrative record and some case citations omitted); see also

Smith, 2018 WL 3719884, at *6 ("[P]laintiff's principal thrust was that the Department of Labor's Bureau of Labor Statistics ("BLS") does not publish job numbers by [DOT] code, but by Standard Occupation Classification Codes ('SOC'), and the two regimes are not equivalent.  However, since at least 2014, [P]laintiff's representative's firm, Citizens Disability, L.L.C., has known that the BLS is unaware of any data source or methodology for reliably translating the number of jobs from SOC codes to [DOT] codes. Therefore, it was not necessary for Plaintiff's representative to familiarize herself with each of the 12,000 jobs of the DOT to question the VE about his methodology." (internal citations to administrative transcript omitted)).  "Simply put, [Plaintiff] was required to raise her objections at the hearing, notwithstanding any alleged impracticalities in doing so."  Mitchell, 2019 WL 426149, at *8.[6]

Despite the absence of any obligation to address Plaintiff's Post-Hearing Objections (and contrary to Plaintiff's assertion that "*the ALJ did not even acknowledge or discuss the rebuttal vocational evidence or the objections filed by Plaintiff regarding the [VE's] testimony*" (Docket Entry 13 at 3 (emphasis in

---

[6] For the same reasons, the Court should not find error with respect to the ALJ's denial, at the end of the hearing, of the request of Plaintiff's counsel "for 30 days to keep the record open to respond to vocational testimony."  (Tr. 58.)

original))), the ALJ did discuss (and overrule) Plaintiff's Post-Hearing Objections as follows:

Subsequent to the hearing, [Plaintiff's representative] submitted objections to [the VE's] testimony. [Plaintiff's counsel], who did appear at the hearing and cross-examine the [VE], offered no objections at that time. Pursuant to 20 CFR 404.1566(d) . . ., when the [SSA] determines that unskilled, sedentary, light, or medium jobs exist in the national economy, the [SSA] takes administrative notice of reliable job information from various governmental and other publications. Nothing in Social Security law, regulations, or the [HALLEX] requires the [VE] to produce any of these sources. A non-exhaustive list of these sources includes:
1. [*DOT*], published by the Department of Labor;
2. *County Business Patterns*, published by the Bureau of the Census;
3. *Census Reports*, also published by the Bureau of the Census;
4. *Occupational Analyses*, prepared for the [SSA] by various [s]tate employment agencies; and
5. *Occupational Outlook Handbook*, published by the Bureau of Labor Statistics.

(20 CFR 404.1566(d)(1)-(5) . . .). In addition, this regulation provides that the [SSA] may use the testimony of a [VE] to determine whether work skills can be used in other work and the specific occupations in which they can be used. (20 CFR 404.1566(e) . . .). [Plaintiff's counsel] cross-examined the [VE] on a number of issues, including the sources of job numbers. The [VE] responded to [counsel's] question in detail, noting the use of sources outlined under the administrative notice provision of 20 CFR 404.1566(d) . . . . The [VE] properly used the information contained in these sources to render her opinion. As noted above, her recognized expertise provides the foundation for her ability to rely on these sources. <u>Therefore, the [ALJ] overrules [Plaintiff's] objections to the testimony of the [VE], and finds the testimony of the [VE] reasonable and acceptable</u>.

(Tr. 16-17 (emphasis added) (internal citation to administrative record omitted).)

Although the ALJ did not <u>expressly</u> discuss the substance of Plaintiff's objections, his remarks make clear that "he believed that [the VE] identified her underlying sources and methodology in a manner sufficient to find her testimony acceptable . . . [a]nd although [Plaintiff] may not agree with th[at] resolution, she does not cite any legal authority demonstrating that it was legally insufficient." <u>Mitchell</u>, 2019 WL 426149, at *9; <u>see also</u> <u>Kidd</u>, 2018 WL 3040894, at *5 (rejecting the plaintiff's argument that ALJ did not adequately address post-hearing objections and holding that "ALJ need not exhaustively catalog each argument to enter a proper ruling").[7] Moreover, as discussed in more detail below, the ALJ did not err in overruling Plaintiff's Post-Hearing Objections as meritless.

_____

[7] Plaintiff's reliance on HALLEX §§ I-2-6-74(B) and I-2-5-30(B) (<u>see</u> Docket Entry 13 at 5 n.2) does not aid her cause for two reasons. First, "because the instructions in the HALLEX have not been formally promulgated as rules or regulations, they are not legally enforceable by claimants against the Commissioner" and, thus, "an ALJ's failure to follow instructions in the HALLEX does not show reversible error." <u>Jessee v. Berryhill</u>, No. 1:16-cv-3188-SEB-MJD, 2018 WL 797393, at *4 (S.D. Ind. Feb. 9, 2018) (unpublished). Second, even if enforceable, neither HALLEX section "compel[s] an ALJ to rule on objections to VE testimony posed *after* a hearing has ended." <u>Horner v. Berryhill</u>, No. 17 CV 4823, 2018 WL 1394038, at *2 (N.D. Ill. March 20, 2018) (unpublished). Plaintiff's citation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), fares no better. (<u>See</u> Docket Entry 13 at 6.) SSR 00-4p requires only that ALJs resolve apparent conflicts between a VE's testimony and the <u>DOT</u>, 2000 WL 1898704, at *2, and "does not govern conflicts between dueling <u>VEs</u>" (Docket Entry 15 at 11).

19

Plaintiff first maintains that Ms. Santagati's "opin[ion] that 'the limitation of occasional interaction with coworkers and supervisors precludes all work'. . . directly contradicts the [VE's] opinion that Plaintiff can perform the jobs [the VE] named." (Docket Entry 13 at 6 (quoting Tr. 311, and referencing Tr. 52-55).) However, Ms. Santagati's opinion predates the VE's testimony in this case by more than ten months and contains <u>no</u> specific references to the facts and circumstances of the instant case. (Tr. 310-11.) As a result, the ALJ did not err by rejecting Ms. Santagati's generic opinion in favor of the VE's more specific hearing testimony that an individual of Plaintiff's age, with Plaintiff's education, work experience, and RFC, and limited to, <u>inter alia</u>, occasional interaction with coworkers and supervisors could nevertheless perform the jobs the VE cited. See <u>Kidd</u>, 2018 WL 3040894, at *11 (finding no error where ALJ "rationally determined to credit [the VE's] impartial, expert opinion (specific to [the plaintiff's] circumstances and largely reliant on the [<u>DOT</u>]) over Santagati's generalized, non-specific report, expressing the extreme, outlier view (with no record or evidentiary support) that an 'occasional interaction' limitation alone 'precludes all work'"); <u>Lara</u>, 2017 WL 7790109, at *9-10 ("Santagati identifies no factual basis beyond her own opinion as to why every single job in America requires more than occasional interaction

with others. . . .  Santagati's opinion is not sufficiently
supported by any evidence.").

Plaintiff next contends that her Post-Hearing Objections
established "the well-known fact that the [DOT] is an obsolete and
static database that is no longer being developed or enhanced by
the United States Department of Labor (USDOL)[,] . . . and [that]
the type of information once provided via the [DOT] is not being
provided by the USDOL via 'O*NET.'" (Docket Entry 13 at 7 (citing
Tr. 275, 281-82, 283-90).)  More specifically, Plaintiff alleges
that the Post-Hearing Objections "demonstrated that up-to-date
vocational information found at the O*NET contradicted the [VE's]
testimony that two of the jobs he [sic] identified (industrial
sweeper/cleaner and laboratory equipment cleaner) could be
performed at the unskilled level required by the ALJ's RFC."  (Id.
at 8 (citing Tr. 21-22, 53, 277).)  Plaintiff concedes that, "under
the regulations[,] the [DOT] is one of the administratively noticed
sources of vocational information[,]" but argues that "the [SSA's]
rules also plainly require that any vocational evidence used to
deny benefits must be up-to-date and reliable."  (Id. at 8-9 n.4.)
According to Plaintiff, "the fact that the [DOT] has not been
updated in 30 years, just as a matter of common sense, plainly
demonstrates that it, *at a bare minimum*, cannot be unquestionably
assumed that it is up-to-date."  (Id. at 9 n.4 (emphasis in
original).)

Plaintiff's contentions regarding the O*NET fail for two reasons. First, "while the [DOT] appears on the list of governmental and other publications from which the [SSA] can take 'administrative notice of reliable job information,' the O*NET does not. Thus, even if the VE's testimony was in conflict with O*NET, there is no requirement that the VE's testimony comply with that database." Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013) (unpublished) (internal citations omitted). Accordingly, the VE here labored under no obligation to harmonize her testimony with the O*NET. See Horner v. Berryhill, No. 17 C 4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018) (unpublished) ("[The p]laintiff argues that 'common sense' should prevail over the explicit regulatory language and the [SSA's] continued reliance on the [DOT]. [The p]laintiff cites to no legal authority for the wholesale abandonment of the [DOT], and we are not willing to rely on 'common sense' as legal support for [the] plaintiff's position.").

Second, as the Commissioner points out in her brief (see Docket Entry 15 at 12), even assuming the VE had the obligation to adopt the O*NET's categorization of the skill levels of the industrial sweeper/cleaner and laboratory equipment cleaner jobs, Plaintiff does not contend that the O*NET rates the third job cited by the VE, cook helper, at a level skill higher than the unskilled work the ALJ found Plaintiff of performing (see Docket Entry 13 at

7-10). Furthermore, the VE testified that 248,000 cook helper jobs existed in the national economy (see Tr. 54-55), which clearly constitutes a significant number of jobs, see Hicks v. Califano, 600 F.2d 1048, 1051 (4th Cir. 1979) ("[The c]laimant contends that the light and sedentary jobs described by the [VE] . . . do not exist in significant numbers within the region.  We do not think that the approximately 110 jobs testified to by the [VE] constitute an insignificant number.").

In sum, Plaintiff has failed to demonstrate that the ALJ erred regarding the Post-Hearing Objections and, thus, her first assignment of error fails as a matter of law.[8]

## 2. Opinions of PT Anglin

Plaintiff's second and final assignment of error contends that "[t]he ALJ erred by failing to analyze the opinion[s of PT Anglin] in accordance with the regulations, [SSA] policy, and Fourth Circuit precedent."  (Docket Entry 13 at 11 (single-spacing,

---

[8] As the Commissioner observes (see Docket Entry 15 at 7-8 n.2), a large portion of Plaintiff's Post-Hearing Objections attacked the reliability of SkillTRAN's Job Browser Pro program (see Tr. 274-76), as used by the VE to generate job numbers (see Tr. 56-57).  Plaintiff, however, did not raise that argument in her brief in support of her instant motion (see Docket Entry 13) and, thus, has waived that argument.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) (Dixon, M.J.) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the [C]ourt will not address them."), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2009) (Schroeder, J.).

underscoring, and bold font omitted).) More specifically, Plaintiff asserts that the ALJ failed to provide 'good/specific/supported' reasons for rejecting PT Anglin's opinions" (id. at 15 (single-spacing, underscoring, and bold font omitted)), and neglected to evaluate PT Anglin's opinions under the factors listed in 20 C.F.R. § 404.1527(c) (see id. at 15-16). According to Plaintiff, those errors by the ALJ qualify as prejudicial, as PT Anglin's opinions, offered in the context of a functional capacity evaluation ("FCE"), "(1) contain far greater, and more detailed limitations than contained within the ALJ's RFC finding; and (2) met Plaintiff's burden to come forward with evidence establishing that she is 'disabled'" (id. at 13), because they limit Plaintiff "to less than sedentary work and [find her] incapable of even part-time work" (id. at 14). Those arguments miss the mark.

Following an FCE conducted on April 8, 2015 (Tr. 483-507), PT Anglin reported that Plaintiff "c[ould] lift 8 [pounds] within middle body heights of knuckle to shoulder level but only 5 [pounds] in an overhead lift," and that Plaintiff's "walking tolerance [wa]s also limited to slightly less than what is considered to be expected for functional community ambulation of 1000 feet in 5 minutes." (Tr. 486.) PT Anglin further noted that Plaintiff's "overall balance [wa]s impaired," and opined that Plaintiff "[wa]s functioning at a less than [s]edentary physical

work demand classification" and "d[id] not demonstrate the ability to tolerate even part time work." (Id.) PT Anglin stated that "[o]verall test findings, in combination with clinical observations, suggest[ed] the presence of near full levels of physical effort on [Plaintiff's] behalf," and that Plaintiff "perceive[d] herself as functioning in a less than [s]edentary level of work demands, which was consistent with observations of her abilities during testing." (Tr. 485.)

The ALJ assessed PT Anglin's opinions as follows:

In April 2015, [PT Anglin] evaluated [Plaintiff] and wrote a statement regarding her functional abilities. Because a physical therapist is not an acceptable medical source who can provide medical opinions as defined by [the SSA's] [r]egulations, the [ALJ] has considered the opinion evidence of [PT] Anglin as that of an "other source." . . . [Plaintiff's] grip testing were [sic] in the normative levels, her gait was slow but non-antalgic, and her lifting tests were limited by her own subjective statements. Additionally, the bulk of her range of motion testing notes that [Plaintiff] was within normal limits, and those that were deemed "painful and limited ability" or "unable to perform" failed to document any measure of the degree of [Plaintiff's] functional limitations. The evaluation relied quite heavily on [Plaintiff's] subjective complaints of pain and her statements that she tried "really, really hard." The exam noted the mild objective findings on medical imaging but did not correlate any of these objective findings to [Plaintiff's] reported limitations. For these various reasons, in addition to the lack of support from the overall record, the [ALJ] gives [PT] Anglin's opinion little weight.

(Tr. 26 (internal citations omitted).) The ALJ's above-quoted analysis of PT Anglin's opinions complies with the SSA's regulations and policies.

As an initial matter, Plaintiff has conceded (see Docket Entry 13 at 15)[9] and the ALJ correctly recognized (see Tr. 26), that PT Anglin does not constitute an "acceptable medical source" under the regulations, 20 C.F.R. § 404.1513(a) (defined to include, inter alia, "[l]icensed physicians (medical and osteopathic doctors"), but rather an "[o]ther source[]," 20 C.F.R. § 404.1513(d)(1).[10] Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p") addresses the significance of the distinction between "acceptable medical sources" and "other sources" as follows:

---

[9] Notably, Plaintiff does not argue (see Docket Entry 13 at 11-21) that PT Anglin worked so closely under a physician's supervision that she offered her opinions while acting as the agent of an acceptable medical source. See generally Taylor v. Commissioner of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (holding that nurse practitioner could qualify as "acceptable medical source" where she worked under physician's close supervision such that she acted as physician's agent); Padrta v. Colvin, No. 3:12-CV-01521-KI, 2014 WL 1236185, at *6 (D. Or. Mar. 25, 2014) (unpublished) (holding where "[t]here is no evidence that the nurse practitioner work[ed] closely with and [wa]s supervised by an acceptable medical source[,] . . . the ALJ is only required to give a germane reason to reject [the nurse practitioner's] opinion"); see also Martin v. Colvin, No. 1:14CV516, 2015 WL 5944455, at *10 (M.D.N.C. Oct. 13, 2015) (unpublished) (instructing ALJ to reassess conclusion that counselor did not constitute acceptable medical source where supervising psychologist signed off on counselor's opinions), recommendation adopted, slip op. (M.D.N.C. Nov. 3, 2015) (Biggs, J.).

[10] Effective March 27, 2017, the Commissioner enacted substantial revisions to Section 404.1513. This Recommendation applies the version of Section 404.1513 in effect on the date of the ALJ's decision.

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, <u>only "acceptable medical sources" can be considered treating sources . . . whose medical opinions may be entitled to controlling weight</u>.

SSR 06-03p, 2006 WL 2329939, at *2 (emphasis added) (internal citations omitted). Thus, Plaintiff's assertion that the ALJ erred by not recognizing PT Anglin as "Plaintiff's treating source" (Docket Entry 13 at 16) lacks any merit.

Plaintiff nevertheless contends that the ALJ must still evaluate opinions from "other sources" like PT Anglin under the "factors set forth in 20 C.F.R. § 404.1527(c)" (Docket Entry 13 at 15), and argues that, "[d]espite the [SSA's] clear preference for examining sources, the ALJ's [sic] fails to even acknowledge that PT Anglin is the only source to have provided such an opinion" (<u>id.</u> at 16 (quoting 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."))). However, the ALJ's analysis of PT Anglin's opinions clearly acknowledged that she <u>examined</u> Plaintiff (<u>see</u> Tr. 26), and Plaintiff cites no authority for her assertion that the ALJ must expressly acknowledge in the decision that PT Anglin offered "the

only examining opinion regarding Plaintiff's physical limitations" (Docket Entry 13 at 16).

Plaintiff next asserts that, "to a certain extent[,] it is only possible to respond to the [ALJ's] reasoning that PT Anglin based her opinion on Plaintiff's subjective complaints that 'of course she did[,]'" because "[c]onsideration of a patient's subjective reports is *always* a part of medical treatment and evaluation." (Id. at 17 (emphasis in original).) According to Plaintiff, "the ALJ's comment is purely speculative and supported by no evidence whatsoever" (id.), and "it is improper to reject [an] opinion where, as here, "'[t]here is nothing in the record to suggest that . . . [the medical provider] relied on [the patient's descriptions of her symptoms] more heavily than [the provider's] own clinical observations'" (id. (quoting Ryan v. Commissioner of Soc. Sec., 528 F.3d 1194, 1200 (9th Cir. 2008)). Plaintiff's argument glosses over the fact that the ALJ did not fault PT Anglin for considering Plaintiff's subjective complaints at all; rather, the ALJ found that PT Anglin's "evaluation relied quite heavily on [Plaintiff's] subjective complaints of pain and her statements that she tried '[r]eally, [r]eally [h]ard.'" (Tr. 26 (quoting 506).)[11]

---

[11] In that regard, Plaintiff's chosen quotation from Ryan actually supports the ALJ's decision-making, i.e., he discounted PT Anglin's opinions because her FCE report "suggest[ed] that . . . [she] relied on [Plaintiff's descriptions of her symptoms] more heavily than [PT Anglin's] own clinical observations.'" Ryan, 528 F.3d at 1200.

The ALJ's citation of a specific example from PT Anglin's FCE depicting PT Anglin's significant reliance on Plaintiff's subjective complaints (id.) also belies Plaintiff's claim that "the ALJ's comment is purely speculative and supported by no evidence whatsoever" (Docket Entry 13 at 17).

Plaintiff additionally attacks "[t]he ALJ's rejection of PT Anglin's opinion[s] due to purported inconsistency with her own treatment notes [a]s simply an impermissible substitution of the ALJ's lay opinion for that of the expert," because "PT Anglin was obviously aware of the content of her own treatment notes when she formulated her opinion." (Id. (emphasis in original).) A fundamental flaw exists in this argument, in that PT Anglin, as a one-time FCE evaluator does not have "treatment notes" to support her opinions of Plaintiff's functional limitations. Without such treatment notes to fall back on, the probative value of PT Anglin's opinions depends in large part on the FCE report's support of those opinions with objective findings. The ALJ did not err by citing the FCE report's failure to support PT Anglin's opinions as one factor in his decision to discount her opinions.

Finally, Plaintiff maintains that, contrary to the ALJ's finding (see Tr. 26), PT Anglin's opinions "[are] not inconsistent with the evidence of record" (Docket Entry 13 at 18). In that regard, Plaintiff cites to her own subjective reports to medical providers and a few clinical findings throughout the relevant

29

period in this case which she contends support PT Anglin's opinions. (Id. at 18-20 (citing Tr. 42-43, 317, 346, 364, 390, 401, 405, 414, 454, 549, 622, 666, 668, 670, 692, 734, 735, 741, 751, 754, 792, 799).) However, Plaintiff misinterprets this Court's standard of review. The Court must determine whether the ALJ supported his decision to discount PT Anglin's opinions with substantial evidence, and not whether other record evidence weighs against the ALJ's analysis, Lanier, 2015 WL 3622619, at *1 ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Here, although the ALJ did not specify the objective evidence that failed to support PT Anglin's opinions in the same paragraph in which the ALJ weighed those opinions (see Tr. 26), elsewhere in the ALJ's decision, he detailed evidence that did not support PT Anglin's extreme limitations (see Tr. 22-24). That approach suffices. See McCartney v. Apfel, 28 F. App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding for lack of sufficient detail where other discussion in decision adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, where an "ALJ analyzes a claimant's

medical evidence in one part of his decision, there is no
requirement that he rehash that discussion" in other parts of his
analysis).  In particular, the ALJ noted:

- Although in April 2015, Plaintiff reported ongoing
  dizziness following a fall, and displayed pain with
  eye movements, slow finger to nose testing, and an
  unsteady gait, "she had no . . . disturbances in
  coordination, focal weakness, numbness or
  paresthesias[,] . . . [a]n MRI of her brain was
  negative and the following month she reported that
  her dizziness was better unless she st[ood] too
  quickly" (Tr. 23 (internal citations omitted));

- Despite Plaintiff's complaint of "neuropathic pain
  in her feet[, d]uring her physical examinations,
  she occasionally demonstrated diminished sensation
  in her ankles and feet . . . [but] evaluation of
  her lower extremity sensation was generally
  unremarkable[, ] she [] walked with a normal steady
  gait with no assistive device[,] and reported that
  gabapentin ha[d] been effective in reducing her
  neuropathic pain" (id. (internal citations
  omitted));

- "[D]espite [Plaintiff's] testimony, there [wa]s
  little, if any[,] evidence of any neuropathic
  changes in her hands and her grip strength testing
  was in the normative group" (id.);

- "Although [Plaintiff's] diabetes has been poorly
  controlled at times, [Plaintiff's] A1c levels have
  improved when she watches her diet and takes her
  medication as directed" and Plaintiff's "non-
  compliance demonstrates a possible unwillingness to
  do that which is necessary to improve her condition
  . . . [and] may also be an indication that her
  symptoms are not as severe as she purports" (id.);

- In December 2013, despite Plaintiff's "complain[ts]
  of progressively worsening lower back pain
  continuing for several days[, o]n examination, she
  showed no tenderness over the spine and only mild
  paraspinal muscle pain in the mid thoracic area"
  (id. (internal citation omitted));

31

- In January 2014, Plaintiff "continued to complain of back pain . . . [but o]n examination she had normal range of motion and strength throughout her extremities with no edema and no tenderness, [] her straight leg raise was negative[, h]er physician observed that [Plaintiff] was able to ambulate into the room with a steady gait[, h]er lumbar x-rays showed preservation of the vertebral body height and disc spaces with only mild scattered degenerative changes" (Tr. 24 (internal citations omitted)); and

- "[D]espite [Plaintiff's] impairments, she has engaged in a somewhat normal level of daily activity and interaction[,]" such as light household cleaning, washing dishes, picking up clutter, sweeping the floor, driving a car, shopping in stores, and continuing to apply for jobs (id.).

The ALJ's above-described analysis confirms that substantial evidence supports his finding that PT Anglin's opinion[s] "lack[ed ] support from the overall record." (Tr. 26.)[12]

---

[12] Plaintiff also argues that, if the ALJ "ha[d] questions regarding . . . the consistency of PT Anglin's opinions with the underlying record, he had numerous options, . . . [such as] obtain[ing] testimony from a medical expert [('ME')], sen[ding] the file back to the [SSA's] non-examining consultant for review of the entire file, arrang[ing] for a physical consultative examination, or even recontact[ing] PT Anglin with questions or for clarification." (Docket Entry 13 at 20-21 (citing 20 C.F.R. § 404.1520b(c)(1), Social Security Ruling 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (Jul. 25, 2012) ("SSR 12-2p"), HALLEX § I-2-5-34).) However, Section 404.1520b(c) and SSR 12-2p describe options available to an ALJ with insufficient evidence to determine the issue of disability, see 20 C.F.R. § 404.1520b(c)(1); SSR 12-2p, 2012 WL 3104869, at *4-5, a circumstance not present here. Moreover, the HALLEX section provides that an ALJ may obtain an opinion from an ME if the ALJ "[b]elieves an ME may be able to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing." HALLEX § I-2-5-34. That section clearly does not mandate that an ALJ consult an ME each time he finds a medical opinion inconsistent with the overall evidence of record.

Under such circumstances, Plaintiff has not shown prejudicial error with respect to the ALJ's evaluation of PT Anglin's opinions.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Judgment Reversing or Modifying the Decision of the Commissioner (Docket Entry 12) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 1, 2019